UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HOSPITAL OF UNIVERSITY OF
PENNSYLVANIA, et al.,

    Plaintiffs,

       v.

KATHLEEN SEBELIUS,[1] Secretary, U.S.
Department of Health and Human
Services,

    Defendant.

Civil Action No. 08-1665 (JDB)

## MEMORANDUM OPINION

Three Philadelphia hospitals -- Hospital of University of Pennsylvania, Presbyterian Medical Center, and Pennsylvania Hospital (collectively, "plaintiffs") -- have filed suit against the Secretary of the U.S. Department of Health and Human Services ("the Secretary"). Plaintiffs seek judicial review of the Secretary's decision to deny them certain supplemental medical education payments authorized by the Balanced Budget Act of 1997 ("BBA '97"), Pub. L. No. 105-33, 111 Stat. 251. Now before the Court are the parties' cross-motions for summary judgment.

Plaintiffs' claims fall into two general categories: a legal question and a factual dispute. The legal question is whether they had adequate notice of claims filing requirements for the supplemental medical education payments authorized by BBA '97. As the parties have recognized, this precise question was presented to this Court in a different case, Cottage Health

---

[1] Former Secretary of the Department of Health and Human Services Michael O. Leavitt was named as the original defendant in this case. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes the current Secretary of the Department of Health and Human Services, Kathleen Sebelius, as the defendant.

System v. Sebelius, Civ.A.No. 08-0098. See Pls.' Mem. at 3; Sec'y's Mem. at 12 n.6. The Court recently resolved cross-motions for summary judgment on this issue in that case, see July 7, 2009 Memorandum Opinion [dkt. ent. # 32] ("Cottage Health Opinion"), and will apply the same principles to resolve the legal question here.

The factual dispute, however, is unique to this case. Plaintiffs have contended at every stage of the proceedings that even if they had notice of the claims filing requirements for the supplemental medical education payments, and even if the time limits from 42 C.F.R. § 424.44 apply, they have in fact satisfied those requirements by timely filing UB-92 forms with their intermediary. The Secretary counters that plaintiffs have not proven that they filed UB-92 forms. The Court focuses the analysis that follows on this factual dispute.

## BACKGROUND

Plaintiffs allege that they were improperly denied supplemental medical education payments by their intermediary for the 1999 and 2000 fiscal years. Am Compl. ¶¶ 3-4. They timely appealed to the Provider Reimbursement Review Board ("PRRB"), the first-level agency review available to health care providers dissatisfied with Medicare reimbursement decisions made by Medicare intermediaries. See 42 U.S.C. § 1395oo(a). Plaintiffs argued that they never received adequate notice of claims filing requirements for the supplemental medical education payments, and the PRRB agreed. See Administrative Record ("A.R.") at 65.[2]

Plaintiffs also contended that whatever the resolution of the legal question -- i.e., the adequate notice issue -- they had in fact complied with the filing requirements and deadlines of 42

---

[2] The Court set out the relevant statutory and regulatory background in the Cottage Health Opinion at 2-5 and does not repeat it here.

C.F.R. § 424.44.  They produced various forms of evidence in support of this claim to the PRRB at a hearing on May 15, 2007, including several witnesses who testified that UB-92 forms were timely mailed to the intermediary.  See, e.g., A.R. at 343 (testimony of Mark Reynolds).  Plaintiffs also presented documentary evidence showing that accounting staff had been instructed to submit UB-92s to the intermediary for the supplemental medical education payments.  See, e.g., id. at 842 (memorandum from Nancy Booth reminding accounting staff to submit UB-92s to the intermediary); see generally id. at 59 (PRRB's summary of plaintiffs' evidence).  The intermediary denied that it had timely received UB-92s from plaintiffs and argued that plaintiffs' evidence was insufficient to prove otherwise.  See id. at 60.  But the intermediary did not present any witnesses or submit any evidence showing that it had not timely received the UB-92s.

In considering the factual dispute, the PRRB wrote:

> The evidence in this case was conflicting, in that [plaintiffs] argued that they submitted manual claims in calendar years 1999 and 2000, and the Intermediary asserts that they never received them. The Board finds [plaintiffs'] evidence that it filed claims credible, but there is no evidence that the claims were proper for processing. However, the Board majority finds that whether [plaintiffs] filed the claims for processing prior to the timely filing deadlines set forth in 42 C.F.R. § 424.44 is moot.

Id. at 63.  The PRRB deemed the factual issue moot because it found in favor of plaintiffs on the legal question -- the PRRB found that the filing deadlines from 42 C.F.R. § 424.44 were inapplicable to claims for supplemental medical education payments.  Id. at 65.  One member of the PRRB dissented.  See id. at 67-69.

The intermediary appealed to the Administrator pursuant to 42 U.S.C. § 1395oo(f).  The Administrator devoted most of his analysis to the legal question and reversed, concluding that the § 424.44 requirements do apply to claims for supplemental medical education payments.  In a

-3-

single paragraph of his seventeen-page decision, the Administrator addressed the factual dispute as well.  A.R. at 18.  Citing the PRRB dissenter's opinion, the Administrator found that plaintiffs had not established that they had timely mailed UB-92s to the intermediary.  Id.  Accordingly, the Administrator reversed.  Plaintiffs then appealed to this Court for review.

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In a case involving review of a final agency action under the Administrative Procedures Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record.  See North Carolina Fisheries Ass'n v. Gutierrez, 518 F. Supp. 2d 62, 79 (D.D.C. 2007).  Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  See Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

Under the APA, a court may vacate an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if it is "unsupported by

substantial evidence."  5 U.S.C. §§ 706(2)(A), (E).  Agency actions are entitled to much deference, and the standard of review is narrow.  See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  The reviewing court is not permitted to substitute its judgment for that of the agency.  See id.  That is, it is not enough for the agency decision to be incorrect -- as long as the agency decision has some rational basis, the court is bound to uphold it.  See id.  The court may only review the agency action to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Id.

**ANALYSIS**

**I. Legal Question -- Adequate Notice**

The legal question presented is whether providers (like plaintiffs) received adequate notice of claims filing requirements for the supplemental medical education payments authorized by BBA '97.  In particular, plaintiffs argue that they never received notice of claims filing requirements, that the Secretary's method of providing notice was inadequate, and that the supplemental medical education payments were exempted from the requirements and deadlines of 42 C.F.R. § 424.44.  See Pls.' Mem. at 30-34.  Plaintiffs also contend that the intermediary failed to consider the "best available evidence," see id. at 34-39, and that the claims filing requirements as interpreted by the Secretary violate the Paperwork Reduction Act, see id. at 40-43.

The Court addressed these exact same arguments in the identical procedural posture in Cottage Health.  See Cottage Health Opinion at 21-31; see also Pls.' Mem. at 30 ("rely[ing] on and incorporat[ing] herein the legal arguments advanced in the briefs in support of summary judgment before this Court for the provider in Cottage Health System."); Sec'y's Mem. at 12 n.6 (stating that to the extent plaintiffs incorporate the briefing in Cottage Health, "the Secretary hereby

incorporates the arguments she advanced in that case"). First, the Court determined that the Secretary had published non-conflicting notice of the claims filing requirements. Id. at 22-25. In particular, the July 1, 1998 Program Memorandum "clearly stated that 'hospitals must submit a claim to the hospitals' regular intermediary in UB-92 format.'" Id. at 23 (quoting Program Memorandum).³ Next, the Court held that the Program Memorandum was a permissible method of providing notice to hospitals of the claims filing requirements. Id. at 25-26.

As to whether the 42 C.F.R. § 424.44 deadlines applied to the claims for supplemental medical payments, however, the Court granted summary judgment in favor of the plaintiff. The Court determined that the Administrator's rationale for finding that the plaintiff had notice that the time limits from § 424.44 applied was too cursory to allow for reasoned review. Id. at 26-29. The Court noted that the plaintiff's "best available evidence" arguments might carry more weight if plaintiff never received notice of the deadlines for filing the UB-92 forms with the intermediary. Id. at 26. Accordingly, the Court remanded the case to the Secretary for further examination and explanation of whether hospitals had received notice of the time limits for filing the UB-92s.

The Court also remanded the case to the Secretary for further explanation as to the plaintiff's arguments under the Paperwork Reduction Act. Id. at 29-31. The Court noted that the Administrator had not addressed these arguments, which are potentially meritorious. Id.

The Court will not repeat this same analysis here. As the parties have recognized, the arguments presented are the same as in Cottage Health, so the outcome should be the same. See,

---

³ The Court considered four possible documents that provided the Cottage Health plaintiff notice of the claims filing requirement. Three of the four, including the July 1 Program Memorandum, applied equally to all hospitals. The fourth, a letter from the fiscal intermediary to the plaintiff, was specific to the Cottage Health plaintiff. The letter simply underscored the Court's determination that the plaintiff had notice but did not drive the Court's conclusion.

e.g., Pls.' Mem. at 3.  The material facts -- i.e., the methods of providing notice to hospitals -- are identical, with limited exception, and hence, the holding applies to both cases.  Accordingly, for the reasons explained above and in greater detail in the Court's Cottage Health Opinion, each party's motion for summary judgment will be granted in part and denied in part.

**II.  Factual Dispute**

The factual dispute here has two components:  whether UB-92s were in fact mailed to the intermediary and whether the UB-92s were properly coded for processing.  If the Administrator's finding that UB-92s were not mailed is supported by substantial evidence, then, of course, the Court need not address the second component, since if the UB-92s were never mailed, then their coding is immaterial.

*A.  Whether UB-92s Were Timely Mailed*

Plaintiffs submitted testimonial evidence that UB-92s were timely mailed to the intermediary as well as documentary evidence that circumstantially makes the same point.  Plaintiffs did not, however, provide direct documentary evidence showing that UB-92s were in fact sent to the intermediary.  For example, plaintiffs did not proffer mailing logs or proof of receipt.[4]  The intermediary did not present any testimony that UB-92s were not received, but argued that plaintiffs' showing was nonetheless insufficient.  The PRRB found plaintiffs' evidence "credible" but deemed the factual dispute moot.  A.R. at 63.

Citing the dissenting PRRB member's opinion, the Administrator found that only one witness -- from one of the three hospitals -- testified with direct knowledge that UB-92s had been

---

[4] Plaintiffs argue that they did not have proof of receipt because the intermediary insisted on receiving the UB-92s via first-class mail instead of certified mail or courier.  See Pls.' Mem. at 24.

mailed to the intermediary.  Id. at 18.  Moreover, "[n]o documentary evidence was submitted to demonstrate that the claims were manually filed."  Id.  The Administrator found the lack of direct documentary evidence critical because hospitals are required to keep UB-92s for five years.  Id.  This finding did not, as plaintiffs contend, reverse the PRRB's credibility determination.  See Pls.' Mem. at 25-30.  Instead, the Administrator decided that even if the evidence in the record was credible, it was insufficient as a matter of law to show that the UB-92s were in fact sent to the intermediary.  See A.R. at 18.

The question, then, is whether the Administrator's decision to disregard plaintiffs' testimonial and circumstantial evidence, and to require direct documentary proof instead, was in accordance with the law.  To be sure, direct documentary proof, if available, is among the most incontrovertible forms of evidence.  But courts have long held that proof of receipt may be established circumstantially by proof of mailing.  See Hagner v. United States, 285 U.S. 427, 430 ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (citing Rosenthal v. Walker, 111 U.S. 185, 193 (1884)).  Nor is direct documentary proof necessary to establish proof of mailing -- "proof of procedures followed in 'the regular course of operations' gives rise to a strong inference that it was properly addressed and mailed."  In re Cendant Corp. Prides Lit., 311 F.3d 298, 304 (3d Cir. 2002) (quoting Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993)).

Hence, the Administrator's focus on the lack of documentary evidence was "not in accordance with the law."  See 5 U.S.C. § 706(2)(A).  But this Court will not determine in the first instance whether the testimonial and documentary evidence submitted by plaintiffs is sufficient to

prove that the UB-92s were mailed to, and hence may be deemed received by, the intermediary under the legal principles explained in the preceding paragraph. That is a determination for the Secretary to make first. Accordingly, the Administrator's determination will be vacated and remanded to the Secretary for further consideration.

*B. Whether UB-92s Were Properly Coded*

Remand is unnecessary, however, if the Administrator also determined that the UB-92s were improperly coded and if his determination was supported by substantial evidence. The Secretary points out that the PRRB found that "there is no evidence that the claims were proper for processing." See A.R. at 63. But the PRRB deemed this issue to be moot. Id. Moreover, the PRRB's factual finding is not before the Court for review -- instead, the Court must focus on whether the Administrator's findings were proper.

The Administrator's factual findings are set out in a single paragraph of his seventeen-page decision. See id. at 18. Most of that paragraph is devoted to whether the UB-92s were in fact mailed to the intermediary. The following two sentences are the only portions of the paragraph that address the coding issue:

> Th[e] witness testified that she was not sure whether the claims were properly filed with both of the required codes (04 & 69).

and

> There was no testimony by any employees of the other two [hospitals] with direct knowledge as to whether claims were mailed and whether the mailing included the required codes 04 and 69.

Id. Indeed, the Administrator did not address the coding issue in his conclusion, "find[ing] that the Intermediary properly declined, as untimely, to accept all of the electronic claims made after the applicable timeframe for filing." Id.

Axiomatically, a court cannot determine whether an agency decision is in accordance with the law or supported by substantial evidence if the agency did not decide anything. Here, the Administrator did not decide that the UB-92s were improperly coded -- the sentences excerpted above merely characterize portions of the evidentiary record. As plaintiffs would have it, the Administrator in fact mischaracterized the record, which contains, for example, testimony from one of plaintiffs' billing supervisors, Mark Reynolds, that the proper billing codes were used on the UB-92s sent to the intermediary. See id. at 343-44 (explaining that beginning in May 1998 plaintiffs used the proper billing codes on the UB-92s sent to the intermediary). In any event, because the Administrator did not make a finding that the UB-92s sent to intermediaries were improperly coded, this Court has no decision to review. Accordingly, if on remand the Secretary finds that the UB-92s were mailed to the intermediary, she shall also examine and determine whether those forms were properly coded to receive the supplemental medical education payments at issue here.

**CONCLUSION**

With respect to the Administrator's decision that plaintiffs did not comply with claims filing requirements in order to receive the supplemental IME and GME payments authorized by BBA '97, each party's motion will be granted in part and denied in part. The Administrator's decision that plaintiff had notice that claims were to be submitted to the fiscal intermediary, and that notice and comment rulemaking was unnecessary for this kind of interpretive rule, was supported by substantial evidence and was not arbitrary or capricious. But the Administrator did not provide an adequate explanation as to why plaintiff had sufficient notice of the time limits for filing claims. Nor did the Administrator address plaintiff's claims under the PRA, which are

sufficiently colorable to have warranted explanation.  Accordingly, this case shall be remanded to the Secretary for resolution of these issues.

The case shall also be remanded to the Secretary for further determination as to whether UB-92 forms were mailed to, and received by, the intermediary.  The Administrator's finding that plaintiffs had provided insufficient proof of mailing and receipt of the UB-92s was not in accordance with the law.  A separate Order accompanies this opinion.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 10, 2009